UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, <br><br> 3180 Fairview Park Drive, Suite 400 <br> Falls Church, VA 22042 <br><br> Plaintiff, <br><br> v. <br><br> HAYDEN CONSTRUCTION & SERVICE COMPANY <br><br> 6 Plum Court <br> Sleepy Hollow, IL 60118 <br><br> Agent for Service: <br> Thomas W. Winkler <br> 1699 E. Woodfield Road, Suite 400 <br> Schaumburg, IL 60173 <br><br> Defendant. | CIVIL ACTION NO. 1:21-cv-1341 <br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> **U.S. Department of Labor** <br> **Attn: Assistant Solicitor** <br> **for Plan Benefits Security** <br> **200 Constitution Ave., N.W.** <br> **Washington, DC 20002** <br><br> **U.S. Department of Treasury** <br> **Attn: Secretary of the Treasury** <br> **1500 Pennsylvania Avenue, NW** <br> **Washington, D.C. 20220** |

## COMPLAINT

Plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund"), hereby complains as follows:

### Introduction

1. This is a civil action brought by an employee benefit plan/trust fund, and by the Trustees of the Fund, pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221, and 4301 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401, and 1451. The Fund seeks a monetary judgment against Defendant awarding delinquent withdrawal liability, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become

1

due and owing through the date of judgment, pursuant to Sections 502, 515, and 4301 of ERISA, 29 U.S.C. §§ 1132, 1145, and 1451, the collective bargaining agreement, and the Trust Document governing the Fund.

### Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e), (f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), (f) and 1451(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), as the Plaintiff Fund is administered in this district with its principal place of business in Falls Church, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

### Parties

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries"

within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

6. The Trustees of the Plaintiff Fund bring this action in their collective names or, as necessary or appropriate, in the name of the respective trust or plan, and its participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

7. At all times relevant to this action, Defendant Hayden Construction & Service Company ("Hayden") has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Hayden has been incorporated in Illinois with a principal place of business at 6 Plum Court, Sleepy Hollow, IL 60118.

**Factual Background**

**A.     Mid State Erectors Inc.'s Obligations**

8. At all times relevant to this action, Mid States Erectors, Inc. ("Mid States") employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 73 ("Local 73" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

9. At all times relevant to this action and until May 1, 2013, Mid States was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union.

Pursuant to the Agreement, Mid States was obligated to submit monthly remittance reports and fringe benefit contributions to the NPF for all hours worked or paid on behalf of Mid States's covered employees within the jurisdiction of Local 73.

10. Pursuant to the Agreement, Mid States was obligated to abide by the terms and conditions of the Trust Agreement establishing the Fund, including any amendments thereto and policies and procedures adopted by the Board of Trustees ("Trust Document").

11. Currently, Mid States is no longer in business and its corporate status is dissolved with the State of Illinois.

**B.  Defendant Hayden Is an Alter ego and/or Successor to Mid States.**

12. Although Hayden is not signatory to the CBA with Local 73, Hayden is an alter ego and/or successor to Mid States, and thus is liable for Mid States's obligations to the Funds.

13. Defendant Hayden had overlapping operations with Mid States and substantially continued the operations of Mid States upon Mid States' cessation of business. Mid States and Hayden shared an interrelation of operations, common management, centralized control of labor relations, and business purpose, and Hayden continued to operate with Mid States's equipment, customers, and employees. Specifically:

    a. Mid States and Hayden are both owned by Darrell Ingram.

    b. Both were operated out of Mr. Ingram's home address at 6 Plum Court, Sleepy Hollow, IL 60118.

    c. Hayden's contact information listed on their website includes the email address msedarrell@sbcglobal.net. Upon information and belief, "mse" stands for "Mid States Erectors" and was also used by Mid States.

      d.      Hayden and Mid States have the same scope of work including fabrication and installation of bleachers, lockers, and basketball equipment in schools and gyms.

      e.      Hayden was incorporated in October shortly after Mid States ceased performing covered work.

      f.      Mid States and Hayden employ the same classification or similar classification of employees, those employees have the same or similar training, and Mid States and Hayden perform the same type of work in the same industry in the same geographic market.

14.      Because Hayden is not signatory to a collective bargaining agreement, Mid States has benefited through the elimination of its labor obligations while its alter ego and/or successor, Hayden, continues to perform covered work. By performing the same work in the same industry with the same employees as Mid States, but now as a non-union operation, Hayden is reaping the financial advantage of not providing benefits as required by its collective bargaining agreement, including its pension obligations.

15.      Because Hayden and Mid States share the same owner, Hayden had notice of Mid States' obligations pursuant to its collective bargaining agreement and participation in the NPF, including potential withdrawal liability.

16.      As an alter ego and/or successor of Mid States, Hayden, is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and jointly and severally liable for any obligations of Mid States arising from the CBA.

**C.**      **Withdrawal Liability**

17.      The NPF determined that Mid States had affected a complete withdrawal from the NPF on or about May 1, 2013 within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

5

18.     On November 7, 2017, the NPF sent a notice of withdrawal to Mid States, advising of the owed withdrawal liability to the NPF resulting from Mid States' withdrawal. This notice informed Mid States that withdrawal liability was assessed in the amount of $12,648.50 and that it was amortized, as required by Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), in a payment schedule to 5 quarterly payments in the amount of $2,163.94 each, with the first payment being due December 1, 2017, and the final payment of $2,126.26 due on March 1, 2019. A copy of the November 7, 2017 letter is attached hereto as Exhibit 1.

19.     In accordance with Section 4219(b)(2)(A) of ERISA, 29 U.S.C. §1399(b)(2)(A), Mid States had ninety (90) days from receipt of the initial notice and demand to request a review of the amount of the liability and/or the schedule for the payments and it failed to do so.

20.     Pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), regardless of whether Mid States chose to request review of the withdrawal liability assessment, the first withdrawal liability payment was due on December 1, 2017. Mid States failed to make the first scheduled payment. To date, neither Mid States nor Defendant have made any payments in accordance with the payment schedule.

21.     By letter dated February 21, 2018, the NPF notified Mid States of its failure to make the first payment under the amortized payment schedule and provided the opportunity to cure the delinquency. The NPF also notified Mid States in this letter that the failure to correct this delinquency within sixty days of receipt of the letter would constitute a default within the meaning of Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), and that the NPF would file a suit against Mid States and any other trades or businesses under common control to collect the full amount of withdrawal liability. A copy of the February 21, 2018 letter is attached hereto as Exhibit 2.

22.     Pursuant to 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), a party is in default if it

has not cured its failure to pay its withdrawal liability installment payments within sixty (60) days following a demand. In the event of default, the plan "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

23. Mid States did not cure the failure to pay the first payment in accordance with the payment plan. Mid States has failed to make any of its statutorily required withdrawal liability payments. Accordingly, because Mid States is in default and Defendant is jointly and severally liable for Mid States' withdrawal liability, Defendant is liable for the remaining unpaid principal of the withdrawal liability.

24. Defendant is also liable for interest, liquidated damages, and reasonable attorneys' fees and costs in accordance with the Trust Document and applicable federal law, 29 U.S.C. § 1451(b), (e).

25. The Trust Document provides that interest shall be charged on any amount in default (including accrued interest), from the date the payment was due to the date it is paid. The interest shall be computed and charged at a rate of 0.0205% compounded daily.

26. The Trust Document further provides that in the event of default, an employer is liable to the Fund for attorneys' fees incurred by the Fund from the date of the delinquency forward and costs, and the greater of (1) interest on the delinquent withdrawal liability or (2) liquidated damages in the amount of 20% of the delinquent withdrawal liability.

## Count I
*Withdrawal Liability*

27. Plaintiffs reallege and incorporate Paragraphs 1 through 26.

28. This claim arises under ERISA Sections 502(a)(3), (d)(1) and (g)(2), 515, 4219,

4221, and 4301, 29 U.S.C. §§ 1132(a)(3), (d)(1) and (g)(2), 1145, 1399, 1401, and 1451, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

29. Mid States has failed to pay amounts owed for withdrawal liability for a period greater than sixty (60) days after notification of failure by the NPF. As a result, Mid States is in default under Section 4219 of ERISA, 29 U.S.C. § 1399(c)(5).

30. Because Hayden is an alter ego and/or successor to Mid States, Defendant is jointly and severally liable for Mid States' withdrawal liability pursuant to the Trust Document and Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), in the amount of $12,648.50.

31. Defendant is liable for interest on all late payment amounts according to the Trust Document and Section 4219(c)(5) of ERISA in the amount of at least $1,456.53 (calculated through November 30, 2021). 29 U.S.C. § 1399(c)(5). Interest continues to accrue on these unpaid amounts until the date of payment.

32. As a result of Defendant's failure to timely remit the withdrawal liability amounts owed to NPF, Defendant is liable for liquidated damages in the amount of 20% of the delinquent withdrawal liability according to the terms of the Trust Document and federal law in the amount of at least $2,529.70.

33. As a result of Defendant's failure to timely remit the withdrawal liability amounts owed to NPF, Defendant is liable for the reasonable costs and attorneys' fees incurred in connection with this action according to the terms of the Trust Document and federal law.

34. Prior to commencing this lawsuit, the Fund sent letters and attempted to directly contact Defendant to obtain the outstanding contributions from Defendant. Defendant has not cured their default. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Fund, and pay the delinquent withdrawal liability and liquidated damages and

interest on the delinquent withdrawal liability.

**WHEREFORE**, Plaintiff requests a judgment against Defendant for all amounts due to the Funds as follows:

1. Declare that Defendant Hayden is an alter ego and/or successor to Mid States and is joint and severally liable for Mid States' debts;

2. Enter judgment against Defendant for the entirety of Mid States's withdrawal liability, in the amount of $12,648.50;

3. Enter judgment against Defendant for interest on the delinquent withdrawal liability payments at a rate of 0.0205% per day, compounded daily, from the date due until the date paid or the date of the judgment, in the amount of at least $1,456.53;

4. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the delinquent withdrawal liability calculated at the above rate, or 20% of the delinquent withdrawal liability, in the amount of at least $2,529.70;

5. Enter judgment for all attorneys' fees and costs incurred by the Fund in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

6. Award such other relief as the Court deems just and proper.


Respectfully Submitted,

    /s/ Diana M. Bardes
Diana M. Bardes (Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
Counsel for Plaintiff Funds

Dated: December 1, 2021

**CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)**

I hereby certify that on this 1st day of December, 2021, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR WITHDRAWAL LIBALITY, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

    /s/ Diana M. Bardes
Diana M. Bardes